

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2000

# In Re: Top Grade SaUnited Statesge, Inc.

Precedential or Non-Precedential:

Docket 99-5383

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: Top Grade SaUnited Statesge, Inc." (2000). *2000 Decisions.* Paper 196.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/196

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 12, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-5383/5402

IN RE: TOP GRADE SAUSAGE, INC.,
        Debtor (99-5383)

IN RE: FORIST DISTRIBUTORS, INC.,
        Debtor (99-5402)

        HELLRING LINDEMAN
        GOLDSTEIN & SIEGAL LLP,
        Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 99-cv-00393/4)
District Judge: Honorable John W. Bissell

Argued: January 27, 2000

Before: GREENBERG*, ROTH and STAPLETON,
Circuit Judges

(Filed: September 12, 2000)

_____

* After this case was argued, but prior to the issuance of this opinion,
Judge Greenberg took senior status on June 30, 200 0.

James A. Scarpone, Esquire (Argued)
David Wolff, Esquire
Hellring, Lindeman, Goldstein &
 Siegal
One Gateway Center, 8th Floor
Newark, New Jersey 07102

 Attorneys for Appellants

Mary Ellen Tully, Esquire (Argued)
Rabinowitz, Trenk, Lubetkin & Tully,
 P.C.
200 Executive Drive, Suite 225
West Orange, New Jersey 07052

 Attorneys for Appellee, Katherine
A. Suplee Chapter 7 Trustee of
Top Grade Sausage, Inc.

Gary S. Jacobson, Esquire
Stuart G. Brecher, Esquire
Jacobson & Brecher, LLC
608 Sherwood Parkway
P.O. Box 1220
Moutainside, New Jersey 07092-
 0220

 Attorneys for Appellee, Albert
Russo, Chapter 7 Trustee for
Forist Distributors, Inc.

OPINION OF THE COURT

ROTH, Circuit Judge.

Prior to the passage of the Bankruptcy Reform Act of 1994, the Bankruptcy Code expressly authorized the Bankruptcy Court to award fees and expenses from the debtor's estate to the debtor's attorneys. The Reform Act omitted debtors' attorneys from the list of officers eligible to receive such an award. See 11 U.S.C. S 330 (1994). We are now confronted with the inevitable question of whether a debtor's attorney remains eligible for compensation from the estate. We conclude that debtors' attorneys are still

2

eligible to receive compensation for fees and expenses reasonably likely to benefit the estate. Under the specific facts of this case, however, we conclude that the debtor's attorneys' services were not reasonably likely to benefit the estate. We will, therefore, affirm the denial of debtor's attorneys' fees in toto for services rendered during the Chapter 11 proceedings.

Jurisdiction was proper in the District Court pursuant to 28 U.S.C. SS 158(a)(1) and 1331. Jurisdiction is proper in this Court pursuant to 28 U.S.C. SS 158(d) and 1291. "Because the District Court sat as an appellate court, reviewing an order of the Bankruptcy Court, our review of the District Court's determinations is plenary." In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995). Therefore, we review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

I. FACTS

The Lipari family owned and managed two successful New Jersey businesses. Top Grade Sausage, Inc., manufactured and distributed sausage. Forist Distributors, Inc., delivered lamb and veal to retailers. When the family was confronted with considerable debt from the criminal defense of the family patriarch, Joseph Lipari, Top Grade and Forist (collectively "Debtors") filed separate voluntary petitions for Chapter 11 bankruptcy protection. Because of the commonality of parties and issues, the Bankruptcy Court administered the two cases together.

Walder Sondak & Brogan, P.A., the law firm that represented the father during his criminal trial and a judgment creditor of both Debtors, filed a motion to appoint a Chapter 11 trustee for both Debtors. The Bankruptcy Court granted the motion, appointed a single Trustee for the Debtors, and approved the Trustee's choice of counsel.

After appointment of the Trustee and Trustee's counsel, the Debtors filed an Application for retention of Hellring, Lindeman, Goldstein & Siegal as Debtors' counsel. According to the Application, Hellring Lindeman was to (1) advise the Debtors of their duties, (2) negotiate and effectuate an arrangement with the creditors, (3) prepare any necessary applications or other legal papers, (4) appear before the Bankruptcy Court and protect the interests of the Debtors, and (5) perform all other legal services for the Debtors. The Bankruptcy Court granted the Debtors' motion on November 18, 1996.

The attempted reorganization of the two companies was unsuccessful and marred by acrimony and rancor. The Trustee assumed control of the companies' operations. Hellring Lindeman was required to address the many conflicts that arose between the Lipari family and the Trustee in the course of the daily operation of the businesses. Hellring Lindeman also filed a reorganization plan and disclosure statement.

As efforts to reach a reorganization plan proved to be unsuccessful, Walder Sondak filed a motion to convert Forist's Chapter 11 reorganization into a Chapter 7 liquidation. On June 30, 1997, the Bankruptcy Court permitted the conversion. Top Grade continued to operate and the parties continued to try to negotiate a reorganization plan. When these efforts failed, the Trustee closed Top Grade. On August 21, 1997, the Bankruptcy Court converted Top Grade's Chapter 11 reorganization into a Chapter 7 liquidation.

Following conversion of the Debtors' petitions, the Bankruptcy Court fixed a deadline for the filing of Chapter 11 administrative claims. Hellring Lindeman filed Chapter 11 fee applications aggregating $ 80,959.75 in fees and $1,403.98 in expenses. The Trustee, the United States Trustee, and Walder Sondak filed objections to Hellring Lindeman's fee application. Each set of objections was limited to the compensability of specific entries.

The Bankruptcy Court conducted a single hearing to consider all the fee applications. During its colloquy with counsel, the Bankruptcy Court raised sua sponte  the

4

question of whether Hellring Lindeman's Application should be denied in toto. Specifically, the Bankruptcy Court was concerned that Hellring Lindeman's representation of debtors-out-of-possession was of no value to the estate. During the hearing, Hellring Lindeman did not ask the Court for additional time to address its concerns, nor did it request a second hearing in the thirty-seven days between the hearing and issuance of an opinion.

On December 3, 1998, the Bankruptcy Court issued its ruling from the bench. A representative from Hellring Lindeman was not present. The Bankruptcy Court disallowed payment of any fees or expenses by the estate to Hellring Lindeman for services rendered to the debtors during the attempted reorganizations. The Bankruptcy Court did permit some compensation for services rendered after the debtors' petitions were converted to Chapter 7. The Bankruptcy Court reasoned that for a debtor's attorneys to receive compensation from the estate, they must show that their services provided a benefit for the estate. The Bankruptcy Court found that Hellring Lindeman's services were either duplicative of services rendered by the Trustee or rendered solely for the benefit of the debtor and not of the estate.

Hellring Lindeman timely appealed to the District Court. Hellring Lindeman claimed that the Bankruptcy Court's decision to deny compensation in its entirely did not comport with due process because Hellring Lindeman was not notified of the Bankruptcy Court's position prior to the hearing. Furthermore, Hellring Lindeman alleged that the Bankruptcy Court erred by requiring Hellring Lindeman to show an "actual benefit" to the estate rather than showing that, at the time rendered, the services were reasonably likely to benefit the estate.

The District Court affirmed the decision of the Bankruptcy Court. In doing so, it raised for thefirst time the issue of whether, pursuant to the 1994 amendment to S 330(a)(1), a bankruptcy court may award fees to a debtor's attorney. The District Court held that, despite the omission of "debtor's attorney" from the amended language of the statute, services by a debtor's attorney which benefit the estate are compensable and that the omission of"debtor's

attorney" from the language of S 330(a)(1) was inadvertent. Hellring Lindeman now appeals to this Court and raises the same issues presented to the District Court.

## II. EFFECT OF THE REFORM ACT AMENDMENT TO S 330

Before we consider the constitutional adequacy of the Bankruptcy Court's proceedings or the underlying merits of Hellring Lindeman's request for fees and expenses, we must decide if the attorney for a Chapter 11 debtor is statutorily entitled to receive compensation from the estate. Prior to 1994, the answer was clear. Debtors' attorneys were among four classes of officers to whom the Bankruptcy Court was specifically authorized to award such compensation.[1] See 11 U.S.C. 330. Congress, however, made sweeping changes to the Bankruptcy Code with the passage of the Bankruptcy Reform Act of 1994 (Reform Act), Pub.L. 103-394. See First Merchants Acceptance Corp. v. J.C. Bradford & Co. , 198 F.3d 394, 400 n.2 (3d Cir. 1999) (listing some of the changes codified in the Reform Act). Among the sections amended by Congress was S 330, the statutory source for compensating officers of the debtor's estate. Section 330 now reads in relevant part:

(a)(1) After notice to the parties in interest and the

_____

1. The relevant section of the Bankruptcy Code provided that:

After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney--

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses.

11 U.S.C. S 330(a) (1994) (emphasis added).

6

United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. S 330. The amended section is remarkable for two reasons. Missing from the list of officers eligible to receive compensation is a debtor's attorney. Also, the penultimate and ultimate class of officers are separated only by a comma and not by the disjunctive "or." This omission renders the section grammatically unsound. It has also led to a split among courts considering whether debtors' attorneys are still eligible to receive compensation from the proceeds of the estate.

Some courts, led by the Courts of Appeals for the Fifth Circuit and the Eleventh Circuit, have concluded that the plain meaning of S 330(a) precludes the award of compensation to debtors' attorneys. See In re Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re American Steel Product, Inc.), 197 F.3d 1354 (11th Cir. 1999); Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.), 157 F.3d 414 (5th Cir. 1998). Other courts, led by the Court of Appeals for the Ninth Circuit, have looked beyond the omission and determined that Congress's deletion of "debtor's attorney" from the statute was inadvertent and thus courts should read "debtor's attorney" back into the statute. See United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Service, Inc.), 195 F.3d 1053 (9th Cir. 1999). See also In re Ames Department Stores, Inc., 76 F.3d 66, 72 (2d Cir. 1996) (stating in dictum that it was "inclined to agree" that debtor's attorneys were still eligible after passage of the Reform Act to receive compensation for their services and

expenses). This question of statutory construction is a
matter of first impression in this Court.2

We begin by looking at the language of the statute. See
Pennsylvania Dept. of Public Welfare v. Davenport , 495 U.S.
552, 557-58 (1990). When the language is unambiguous
and "the statutory scheme is coherent and consistent, there
generally is no need for a court to inquire beyond the plain
language of the statute." United States v. Ron-Pair
Enterprises, Inc., 489 U.S. 235, 240-41 (1989). After a close
analysis of the disputed section and its location in the
Bankruptcy Code, we find that, if the current version of the

_____

2. We would not need to answer this complicated question here if
Hellring Lindeman qualified as a "professional person[ ] employed under
section 327 or 1103" pursuant to S 330. Unfortunately, Hellring
Lindeman does not qualify for compensation as a professional person.
Section 1103 is concerned with professional persons hired in support of
the creditors' and equity security holders' committees. Section 327
concerns the employment of professional persons by the trustee. This
section reads in pertinent part:

     (a) Except as otherwise provided in this section, the trustee, with
the
     court's approval, may employ one or more attorneys, accountants,
     appraisers, auctioneers, or other professional persons, that do not
     hold or represent an interest adverse to the estate, and that are
     disinterested persons, to represent or assist the trustee in
carrying
     out the trustee's duties under this title.

     (b) If the trustee is authorized to operate the business of the
debtor
     under section 721, 1202, or 1108 of this title, and if the debtor
has
     regularly employed attorneys, accountants, or other professional
     persons on salary, the trustee may retain or replace such
     professional persons if necessary in the operation of such
business.
     . . .

     (e) The trustee, with the court's approval, may employ, for a
     specified special purpose, other than to represent the trustee in
     conducting the case, an attorney that has represented the debtor,
if
     in the best interest of the estate, and if such attorney does not
     represent or hold any interest adverse to the debtor or to the
estate
     with respect to the matter on which such attorney is to be
     employed.

Since it was the debtors, not the Trustee or a creditors' committee, that retained Hellring Lindeman, Hellring Lindeman cannot show that it was hired pursuant either to S 327 or to S 1103.

8

statute is read to omit "debtor's attorney," it is ambiguous and inconsistent with other provisions of the Bankruptcy Code.

The most striking effect caused by the omission is on the internal consistency of S 330 itself. The section is comprised of just one long sentence. The sentence begins by delineating those officers to whom the District Court "may award" payments. As emphasized above, "debtor's attorney" is no longer included in this first list. But when the sentence continues at subsection (a)(1)(A), the list of potential fee recipients is unchanged from the previous version of the subsection. The Bankruptcy Court is authorized to award payment for services that are rendered by "the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person." 11 U.S.C. S 330(a)(1)(A) (emphasis added). As S 330 now reads then, the second half of the sentence seems to partially permit what the first half prohibits.

One possible explanation is that debtors' attorneys are not the only attorneys whose services could benefit the estate. Other officers of the estate must routinely hire attorneys to help with the administration of the estate. Those attorneys' services should be compensated. While this is true, however, the present structure ofS 330 does not support this conclusion. Prior to amendment, it was undisputed that the repetition of officers inS 330(a)(1)(A) was meant to parallel the officers previously listed in S 330(a)(1). See In re Miller , 211 B.R. 399, 402 (Bankr.D.Kan. 1997).

Moreover, the current version uses the definite article "the" to modify the officers listed in S 330(a)(1)(A) rather than the indefinite articles "a," "an," or "any." Webster's dictionary defines "the" as "a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance." Webster's Ninth New Collegiate Dictionary 1222 (1989). See also BLACK'S LAW DICTIONARY 1477 (6th ed. 1990) ("In construing statute, definite article `the' particularizes the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force `a' or `an'."). The use of "the" in S 330(a)(1)(A) then refers to the universe of

9

officers listed in S 330(a)(1), thereby leaving the word "attorney" in S 330(a)(1)(A) without prior reference. See Miller, 211 B.R. at 402. See also In re Cohn, 54 F.3d 1108, 1115 (3d Cir. 1995) ("[C]ourts are obliged to give effect, if possible, to every word Congress used.").

If, on the other hand, Congress had wished to authorize payment for all attorney services performed for officers of the estate, Congress should have modified "attorney" with the indefinite article "any," as it did "paraprofessionals." This modification would not, however, have been necessary for payment of attorneys hired by the trustee because this category of attorneys can be compensated as "professional persons employed under section 327 or 1103 . . . ."3 11 U.S.C. S 330.

Some courts have sought to explain the retention of "attorney" in S 330(a)(1)(A) by reference to S 330(a)(4)(B), which was added in the Reform Act. Section 330(a)(4)(B) provides that

> [i]n a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on the consideration of the benefit and necessity of such services to the debtor and other factors set forth in this section.

11 U.S.C., S 330(a)(4)(B). See e.g., Century Cleaning, 195 F.3d at 1064 (Thomas, J. dissenting); In re Fassinger, 191 B.R. 864, 865 (Bkrtcy.D.Or. 1996). These courts have concluded that "attorney" in S 330(a)(1)(A) must reference a debtor's attorney permitted compensation by S 330(a)(4)(B). Moreover, courts have held that S 330(a)(4)(B) provided

_____

3. The dissent in Century Cleaning, 195 F.3d at 1063, supported the restrictive interpretation of "attorney" in S 330(a)(1)(A) by concluding that "it is entirely consistent . . . that Congress intended to eliminate compensation as a matter of course, but wished to retain the avenue for a Chapter 7 debtor's attorney to receive compensation on appointment by the trustee when the debtor's attorney acts for the estate's benefit." This explanation is faulty, however, because in such a situation the debtor's attorney would be eligible for an award as a professional person hired under section 327 or 1103.

further support for the conclusion that debtors' attorneys, other than those mentioned within that subsection, are precluded from the award of compensation for fees and expenses based on the canon of statutory construction, expressio unius est exclusio alterius. See Century Cleaning, 195 F.3d at 1057 n.3. This argument, however, ignores the structure of S 330.

If S 330(a)(4)(B) is read without reference to the entire text of S 330(a)(4), it could be read to provide a Chapter 12 or Chapter 13 debtor's attorney a right to an award not shared by that attorney's peers. However, when S 330(a)(4)(A) is read in conjunction with the proceeding subsection, S 330(a)(4)(B), it is clear that this was not Congress's intent. Section 330(a)(4)(A) seeks to assure that only services that are unique, necessary or reasonably likely to benefit the debtor's estate are compensated. Section 330(a)(4)(B) sets forth a more liberal standard for attorneys representing individual debtors in a Chapter 12 or 13 bankruptcy proceeding. "The fact that the statute employs a different standard to determine the level of reimbursement for Chapter 12 or Chapter 13 debtor's attorneys certainly does not suggest that the other debtor's attorneys are not entitled to reimbursement." Century Cleaning , 195 F.3d at 1057 n.3. Indeed, recognition by Congress that this discrete class of debtors' attorneys need to be excepted from the regular, more stringent standards for compensation evidences Congress's belief that debtors' attorneys in general remained eligible for compensation under the customary standard. To then read S 330 to preclude eligibility would create a glaring inconsistency in the Bankruptcy Code.4

In addition, S 329 contemplates the prepetition payment of fees to the debtor's attorney from the debtor, subject to court review for reasonableness. Payment by the debtor of a prepetition retainer would not remove those funds from the property of the estate. This being the case, would S 330 prevent the prepetition retainer from being applied to

_____

4. Moreover, Congress did not omit "debtor's attorney" from section 330(a)(1) and replace it with "debtor's attorney authorized under section 330(a)(4)(B)." The omission in 330(a)(1) was without qualification.

11

postpetition attorney services performed for the debtor? See Miller, 211 B.R. at 402. If it did, this would create another imponderable in the Bankruptcy Code.

Accordingly, because the statutory scheme would be rendered inconsistent if we were to read S 330(a) to omit debtors' attorneys and because the legislative history does not manifest an intent by Congress to change the long-standing practice of compensating debtors' attorneys,5 see Century Cleaning, 195 F.3d at 1058-60 (comprehensively detailing legislative history of the statute); see also Dewsnup v. Timm, 502 U.S. 410, 419-420 (1992) ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."), we conclude that debtors' attorneys may still receive an award of compensation from the estate for services rendered and expenses incurred.

III. DID HELLRING LINDEMAN RECEIVE DUE PROCESS?

We now turn to the constitutional adequacy of the proceeding in the Bankruptcy Court. Hellring Lindeman alleges that the Bankruptcy Court did not provide it with adequate notice and opportunity to be heard pursuant to the Due Process Clause when, during the fee application hearing, the Bankruptcy Court sua sponte raised doubts about awarding a fee to Hellring Lindeman. Hellring Lindeman argues that the timing of this notice did not afford it the time needed to prepare an answer to the Bankruptcy Court's position. For example, Hellring Lindeman cites the fact that David Wolff of Hellring Lindeman erroneously informed the Bankruptcy Court during the hearing that Hellring Lindeman had not submitted a reorganization plan.

_____

5. Given the curious structure of the statute and the product of the debtor, we cannot help but be reminded of an admonition often attributed to Bismarck that "No man should see how laws or sausages are made." See Community Nutrition Institute, et al. v. Block, 749 F.2d 50,
51 (D.C. Cir. 1984) (Scalia, J.).

Our examination of the record does not, however, bear out the contention that Hellring Lindeman did not have an opportunity to present to the Bankruptcy Court the extent to which Hellring Lindeman's services benefitted the estate. At the hearing, the Bankruptcy Judge expressed her concerns that Hellring Lindeman's efforts had not benefitted the estate and questioned Wolff about this:

> [O]ne of my concerns in the [Chapter] 11-- and I'm not sure it was fully addressed -- is the bottom line, you guys represented a debtor-out-of-possession. Why am I compensating you at all for the estate if I can't discern any benefit? And I don't mean to be cutting you off at the knees but if my whole concern is benefit, so what did you guys do for me so-to-speak

JA at A-221. Wolff discussed the services rendered by Hellring Lindeman, including the mistaken representation that it had not submitted a reorganization plan, and concluded by saying, "But with that, I'm finished, Your Honor." JA at A-225. Hellring Lindeman did not attempt to correct the erroneous statement about the reorganization plan during the intervening 37-day period before the Bankruptcy Court issued its ruling; nor did Hellring Lindeman ask for the opportunity to expand upon the explanation of benefit given by Wolff at the fee hearing.

We have previously noted that "the bankruptcy court has the power and the duty to review fee applications, notwithstanding the absence of objections by the United States trustee . . . creditors, or any other interested party . . . ." In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 848 (3d Cir. 1994). See 11 U.S.C. S 330(a)(2) ("The [bankruptcy] court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested."). We further noted that "the Code, see SS 329(b), 330(a); see also Rule 2017(b) -- and perhaps even the dictates of due process, see U.S. CONST., amend. V -- mandates that the court allow the fee applicant an opportunity, should it be requested, to present evidence or argument that the fee application meets the prerequisites for compensation; canons of fairness militate against forfeiture of the requested fees simply because the court's

13

audit of the application uncovers some ambiguity or objection." Busy Beaver, 19 F.3d at 846.

In Busy Beaver, the Bankruptcy Court sua sponte, "issued an order denying compensation for certain services performed by paraprofessionals . . . ." Id. at 838. The aggrieved attorney did not have an opportunity to argue on his behalf until he filed a motion for reconsideration. Here, when faced with the Bankruptcy Court's objection to its fee, Hellring Lindeman could have requested additional time to prepare an answer to the objections. It did not do so. Nor, did Hellring Lindeman request a further hearing. In Busy Beaver, we stressed that a hearing should be held when requested. Id. Although Hellring Lindeman had ample time to correct the record or request a follow-up hearing, it chose not to do so. Accordingly, Hellring Lindeman cannot now demonstrate that it was not afforded due process.

IV. THE "REASONABLY LIKELY TO BENEFIT" TEST

The Bankruptcy Court applied a "benefits analysis test" when evaluating Hellring Lindeman's fee application. See In re Xebec, 147 B.R. 518 (Bankr. 9th Cir. 1990). According to that test, the "attorney's services had to be identifiable, tangible, and of material benefit to the estate in order to be compensable." (Dec. 3, 1998 Tr. at 23). On appeal to the District Court, Hellring Lindeman directed the Court to S 330(a)(4)(A) which prohibits compensation for the "unnecessary duplication of services; or . . . services that were not- . . . reasonably likely to benefit the debtor's estate; or . . . necessary to the administration of the case." 11 U.S.C. S 330(a)(4)(A) (emphasis added).

The District Court affirmed the Bankruptcy Court's determination that a debtor's attorney seeking allowances for services provided after appointment of a Chapter 11 Trustee must show an actual benefit to the estate"lest the state be taxed twice for services that only the Trustee should have rendered." We do not agree. Section 330(a)(4)(A) already protects the estate from the unnecessary duplication of services. We will, therefore, adopt the test proposed by Hellring Lindeman that its application be evaluated pursuant to the standards set

14

forth in S 330(a)(4)(A) and not by some heightened standard or by hindsight. Accordingly, the debtor's attorney must show that the representation was reasonably likely to benefit the debtor's estate.

Do Hellring Lindeman's services for the debtors during the attempted reorganization meet the "reasonably likely to benefit the debtor's estate" standard set forth in S 330(a)(4)(A)? The Bankruptcy Court held that it "could find no service that was not either A) . . . rendered solely to the debtor out of possession and thereby by definition of no benefit to the estate or B) . . . that was not duplicative of a Trustee or Trustee's counsel duty. Therefore, I disallow any fees to Hellring [Lindeman] in the Chapter 11 context." JA at A-23. The District Court concurred but noted further that even if the "reasonableness" test adopted were applied, Hellring Lindeman still would not be eligible for an award of fees and expenses from the estate. Our review of the record convinces us that Hellring Lindeman's services do not meet the "reasonableness" test.

It is primarily the duty of the Chapter 11 Trustee to help the parties reach an acceptable reorganization plan. The debtor's attorneys must bring something unique to the negotiations in order to receive compensation from the estate. Hellring Lindeman's fee application states, inter alia, that its services to the debtors included: (1) meeting with the debtor's principals to learn the history of the cases, (2) reviewing the exhaustive pleadings of the case, (3) meeting with the debtor's prior counsel to learn about the complex background of the case, (4) preparing numerous pleadings, (5) attending various court hearings, (6) conducting numerous telephone conversations and meetings with representatives of the debtors concerning diverse matters, and (7) researching various legal issues. After a search of the record, we are unable to ascertain any particular action by the debtor's attorney that could not have been done by the Trustee and his staff. Moreover, the Bankruptcy Court found that it was the debtors who were inflexible and insistent that Walder Sondak not be fairly compensated. Given that finding, which is not clearly erroneous, along with the nature of the services performed, it is difficult to see how Hellring Lindeman's services could have been

15

considered reasonably likely to benefit the estate. Cf. In re Pro-Snax, 157 F.3d at 426 n.17 (commenting that even under a reasonableness test the law firm should have concluded that its services would be futile).

Hellring Lindeman also argues that the mere fact that it was appointed by the Bankruptcy Court demonstrates that its representation was reasonably likely to benefit the estate. No such per se rule exists. It is the burden of the debtor's attorneys to demonstrate that their representation was reasonably likely to benefit the estate. Hellring Lindeman did not do so.

V. CONCLUSION

In sum, we conclude that debtor's attorneys are eligible for compensation from the estate when their services meet the standards set forth in 11 U.S.C. S 330(a)(4)(A). We find, however, that Hellring Lindeman's services do not rise to meet that standard. Accordingly, we will affirm the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16