**In re COMDISCO, INC., et al., Debtors.**

**No. 01 B 24795.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 14, 2002.

John Wm. Butler, Jr., George N. Panagakis, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Debtor.

Roman Sukley, Office of the U.S. Trustee, Chicago, IL, for U.S. Trustee.

Chaim J. Fortgang, New York City, for Creditors Committee.

Ronald W. Hanson, Latham & Watkins, Chicago, IL, for Creditor's Committee (Local Counsel).

Ann Marie Bredin, Jones, Day, Reavis & Pogue, Chicago, IL, for DIP Lenders (Local Counsel).

Michael Bassett, Jones, Day, Reavis & Pogue, New York City, for DIP Lenders.

David F. Heroy, Carmen H. Lonstein, Bell, Boyd & Lloyd, Chicago, IL, for Equity Security Holders (Local Counsel).

Edward S. Weisfelner, Scott M. Berman, Berlack, Israels & Liberman, New York City, for Equity Security Holders.

Dennis E. Quaid, Clinton P. Hanson, Fagel Haber LLC, Chicago, IL, for Equity Office Properties.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

Equity Office Properties leased two properties to the Debtor, Comdisco, Inc., one in Oregon and the other in California. The Debtor has now rejected both leases and the issue is how much it owes in rent and other charges under the leases as administrative expenses.

■ On the first day of this case, July 16, 2001, the Debtor filed a motion to reject certain leases, including the lease of the Oregon property. That motion requested that the rejection be effective on the date of the motion, July 16th. An order granting the motion was not entered until after a hearing on August 9th, but, consistent with the motion, the order provided that the rejection of the Oregon property lease was effective as of July 16th. Equity Office had notice of the motion, the hearing on August 9th, and the entry of the order. It did not oppose the motion or ask that the order be amended or modified under Rule 59 or request relief from the order under Rule 60. It now argues, however, that the effective date of rejection should be August 9th when the order was entered. It alleges that the Debtor in fact occupied the premises, and points out that the § 362[1] automatic stay prevented it from regaining possession until the order was entered on August 9th.

Equity Office's position must be rejected. It is bound by the order, whether or not it might have had some grounds to

oppose the motion, had it chosen to do so. The lease was rejected as of July 16, 2001. Since no rent or other charges came due after the entry of the order for relief and before the effective date of rejection (the same date), Equity Office's motion with respect to the Oregon property will be denied.

■ With respect to the California property, the Debtor sought and obtained different relief. On July 16th this Court entered an order authorizing the Debtor to reject certain leases, including the lease of the California property, on ten days notice. Pursuant to that order, the Debtor served Equity Office a notice on August 1st that the lease of the California property would be rejected effective August 11th. The Debtor cannot, and does not, now deny that August 11th was the effective date of rejection. The issue is whether the Debtor now owes as an administrative expense rent for the entire month of August or only for the first eleven days of that month on a prorated basis.

Section 365(d)(3) of the bankruptcy code provides that, "The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." The Debtor, as a debtor in possession, is, of course, charged with the duties of a trustee (§ 1107(a)) and is therefore required to comply with § 365(d)(3). The parties agree that under controlling authority, *Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125 (7th Cir.1998), the Debtor is obligated to reimburse the landlord for taxes, common area maintenance charges and other pass through obligations under the lease only on a prorated basis.

**1.** Statutory references are to the bankruptcy code, 11 U.S.C. §§ 101, *et seq.*

The parties disagree about whether the Debtor may also prorate rent for the month of August. Under the lease, that rent was payable in advance on August 1st. Office Equity contends that it is entitled to the full rent for August, not just the prorated share for the first eleven days. The Court agrees with Office Equities.

*Handy Andy* did not deal with rent payable in advance. That decision dealt with a pass through obligation to reimburse the landlord for real estate taxes incurred in the past, before the reimbursement obligation was payable under the lease. The Seventh Circuit held that, regardless of the terms of the lease, taxes (and presumably other charges relating to past occupancy) are prorated, so that only charges attributable to occupancy in the post-order for relief/pre-rejection period are payable under § 365(d)(3). The court reached that result by looking at the underlying economic reality of such charges. It determined that expenses incurred by the landlord before the order for relief are sunk costs, that is costs incurred in the past that have no present relevance to the operations of the debtor. As Judge Posner correctly perceived, a major theme of bankruptcy is that sunk costs should not be allowed to prevent a debtor from continuing operations in the future, if it can do so on a current basis. Indeed, a principal purpose of chapter 11 is to relieve firms of the burden of sunk costs so that they may emerge as profitable entities.[2] See generally Charles W. Adams, "An Economic Justification for Corporate Reorganizations," 20 Hofstra L.Rev. 117 (1991). It would therefore be anomalous for Congress to have burdened bankruptcy estates with sunk costs under the guise of protecting landlords. After all, the purpose of § 365(d)(3) is to protect commercial landlords from the procedural and substantive burdens faced by claimants of post-bankruptcy administrative expenses under § 503(b), so that landlords, who typically are required by the automatic stay to involuntarily extend credit to debtors, may be paid currently for current services. See *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr.N.D.Ill. 1992). Requiring the debtor to reimburse for expenses incurred before the bankruptcy does not serve that purpose, but would burden the debtor with sunk costs, contrary to the otherwise consistent theme of the bankruptcy code.

The language of 365(d)(3), moreover, applies only to obligations "arising" during the post-order for relief/pre-rejection time period. The obligation to pay taxes arises at the time of occupancy, not when the lease says the landlord is entitled to bill and be paid for those charges. "[T]hat obligation [to pay the taxes] could realistically be said to have arisen piecemeal every day of 1994...." *Handy Andy*, 144 F.3d at 1127. For these reasons, the court of appeals held that § 365(d)(3) requires the payment of only that portion of pass through expenses that relate to the period between the dates of the order for relief and the rejection of the lease, even if the lease by its terms requires the debtor/tenant to pay expenses relating to an earlier time.

The Debtor's problem here is that the rationale of *Handy Andy* cannot be extended to an obligation to pay rent that comes due under a lease in the post-bankruptcy/pre-rejection period and that is for a period in the future. That rent is not a sunk cost that relates to a time before the

---

**2.** Essentially the same principle, commonly referred to as the "fresh start," applies to individuals in chapter 7 and chapter 13 cases.

bankruptcy case, but a charge for the consumption of a resource during the administration of the case. Another principle of bankruptcy is that costs of administration must be paid. See, *e.g.*, § 1129(a)(9)(A) (plan may be confirmed only if holders of administrative claims are paid in full or agree otherwise). Of course the principle that debtor in possession obligations must be paid is usually limited by the requirements of § 503(b)(1) that the expenses be "actual" and "necessary." Under § 503(b)(1), therefore, proration would certainly be appropriate; the expense of the right to occupy space after the rejection date is not necessary. Unfortunately for the Debtor and its creditors and equity interest holders, Congress plainly intended to remove the claims of commercial landlords from the strictures of § 503(b)(1). Section 365(d)(3) requires payment of current lease obligations "notwithstanding section 503(b)(1)."

"Notwithstanding" means "in spite of" and in § 365(d)(3) modifies "timely perform." The debtor in possession is therefore required to timely perform the debtor's lease obligations in spite of anything contained in § 503(b)(1). Section 503(b)(1), to the extent relevant here, contains two major components: The first requires a notice and hearing to be followed by the allowance of an administrative expense. The second limits the administrative expense that may be allowed to "actual, necessary costs and expenses of preserving the estate." Section 365(d)(3) therefore requires performance of the lease in spite of that requirement and that limitation. The Debtor must pay the rent without an allowance following a notice and hearing, and not limited to an amount that is necessary. See *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401, 404 (9th Cir.1994)(requirement that landlord prove reasonable value under § 503(b)(1) "is wholly inconsistent with the mandate of section 365(d)(3)" which "has already granted priority status to full payment of rent due...."); *In re Pudgie's Development of NY, Inc.*, 239 B.R. 688 (S.D.N.Y. 1999) ("the clause 'notwithstanding section 503(b)(1)' means 'irrespective of whether payments required under the lease meet the usual requirements for administrative status, reasonableness and benefit to the estate, they are unconditionally due'" quoting *In re Wingspread Corp.*, 116 B.R. 915, 925 (Bankr.S.D.N.Y.1990)).

No doubt § 365(d)(3) could have been drafted with greater sensitivity to the delicate balancing of interests required to efficiently and equitably allocate the losses caused by insolvency. As the Debtor correctly argues, this construction of § 365(d)(3) risks undermining bankruptcy reorganizations by imposing costs that are not necessary. That, at best, effectively transfers scarce debtor resources from creditors to landlords, without a compensating benefit to the bankruptcy estate. At worst, to the extent the prospect for reorganization is impaired, not only creditors, but also current employees and other suppliers of inputs may be harmed. Proration, on the other hand, would not defeat the purpose of § 365(d)(3) or seriously injure the landlords because they would still be paid for current services at the lease rates. In short, § 365(d)(3) may often result in windfalls to the landlord, at the expense of other creditors and stakeholders (including other landlords) with equally worthy claims. That result would be prevented by applying the § 503(b)(1) "necessary" limitation to a claim under § 365(d)(3) so as to require proration. But it is for Congress, not this Court, to make the rules. Reading a proration requirement into § 365(d)(3), however reasonable, would be the same as reading § 503(b)(1) into it and would directly violate the Congressional dictate that

§ 365(d)(3) be applied in spite of § 503(b)(1).

Nor is there basis for any argument that the obligation to pay rent arises only when the premises are occupied where, as here, rent is payable in advance. Under *Handy Andy,* such an argument might deal with the case where rent is payable in arrears. Cf. *Vause v. Capital Poly Bag, Inc. (In re Vause),* 886 F.2d 794 (6th Cir.1989). In this case, however, the Debtor has pointed to nothing in the lease or Illinois law that suggests that the obligation to pay rent in advance arises only as the tenant actually occupies the leased space after the date the rent was payable. That the obligation relates to a future event does not mean that it does not arise immediately. Rent is the consideration for the right to occupy in the future and the landlord's covenant of quiet enjoyment and promise to provide other services during that future period. Black's Law Dictionary (6th Ed.1990) defines "arise" to mean "to spring up, originate, come into being. . . ." An obligation related to a past event may be said to originate when that event occurs, but an obligation to pay for the promise of future consideration originates or comes into being, not when the future consideration is provided, but when the payment is due.

It is for such reasons that the only circuit court that has decided the issue held that § 365(d)(3) requires payment of rent as required by the lease, and prohibits proration between the pre- and post-rejection periods. *In re Koenig Sporting Goods, Inc.,* 203 F.3d 986 (6th Cir. 2000)(full month's rent due even though lease rejected on second day of that month). In addition, the third circuit has gone so far as to reject the rationale of *Handy Andy* and held that not even taxes relating to past occupancy may be prorated, but the debtor in possession must pay all charges in accordance with the lease until it is rejected. *In re Montgomery Ward Holding Corp.,* 268 F.3d 205 (3rd Cir.2001). And the ninth circuit held, in a case not involving the proration issue, that rent could not be reduced under the principles embodied in § 503(b)(1). *Pacific–Atlantic Trading,* 27 F.3d at 403–05. Although there is contrary authority at lower levels, see, *e.g., In the Matter of Swanton Corporation,* 58 B.R. 474 (Bankr.S.D.N.Y.1986)(annual rent), this Court is persuaded that the Debtor's sensible policy arguments are overridden by the plain language of § 365(d)(3).

With respect to the California property, therefore, Equity Office's request for the allowance of an administrative expense is granted in the full amount of rent for August, 2001, without proration. Its request for payment of pass through expenses prorated as of August 11th is also granted. In all other respects, the request is denied.[3] As indicated above, with respect to the Oregon property, the request is denied. The parties will submit an appropriate draft order within 10 days.

---

**3.** Equity Office also requested attorney fees. The request contains no information sufficient to determine its right to such fees under § 365(d)(3) or otherwise, and nothing in the arguments touched on that issue. Equity Office may have a claim arising from the rejection of the leases that may include attorneys fees, but nothing was presented to show that the Debtor had any obligation to pay fees during the post-order for relief/pre-rejection period covered by § 365(d)(3). Nothing in this opinion or any order entered in accordance with this opinion should be deemed to prejudice Equity Office's rejection claims in any respect, including any claims it may have to fees.