COMPUTER SALES INTERNATIONAL, INC., Appellant,

v.

FEDERAL–MOGUL GLOBAL INC., et al., Appellees.

No. CIV.A. 03–346.

United States District Court, D. Delaware.

April 4, 2005.

**162**

Laura Davis Jones, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE, for Federal–Mogul Global Inc., T & N Limited et al., Debtors.

William F. Taylor, Jr., McCarter & English, LLP, Wilmington, DE, for Computer Sales International Inc., Appellant.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the Court on Appeal from the United States Bankruptcy Court for the District of Delaware's (the "Bankruptcy Court") Order of February 18, 2003 (the "February 18 Order"), which denied Computer Sales International, Inc.'s ("CSI") Motion for Payment Pursuant to 11 U.S.C. § 365(d)(10), and Allowance and Payment of Administrative Expense Claims ("Motion for Payment") as against Federal–Mogul Global, Inc. (hereinafter "Appellees" or "Debtors"). On February 5, 2003, CSI timely filed this appeal. For the reasons discussed herein, the Court will affirm the February 18, 2003 Order.

### I. Procedural and Factual Background

#### A. Procedural Background

On October 1, 2001 (the "Petition Date"), Debtors and its subsidiaries and/or affiliates filed voluntary petitions for relief under Title 11 of the United States Bankruptcy Code. The Debtors continue to operate their businesses as debtors-in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. (Appellant Br. at 1.) CSI is a privately-owned, independent lessor of computer and technology equipment, who leased equipment to Debtors throughout the United States, Canada, and Europe pursuant to a Master Lease and Equipment Schedule (hereinafter "Master Lease"). (*Id.*)

The parties do not dispute that the terms of the Master Lease called for rent to be paid on the first day of each month. Section 3 of the Master Lease stated:

3. MONTHLY RENTAL

\* \* \* \* \* \*

The Monthly Rental for each unit shall commence on the Commencement Date [the date the Unit is installed] of such unit and shall be due and payable in advance and without demand on the *first day of each month* thereafter during the term of this Lease.

(A00001.)[1] (emphasis added.) Further, on November 17, 1998, CSI entered into a First Amendment to the Master Lease Agreement, which stated:

*Section 5 Net Lease:*

Lessee's obligation to pay Monthly Rental and all other sums due hereunder shall be *absolute and unconditional* and shall not be subject to any setoff, abatement, counterclaim, recoupment, defense, cancellation, repudiation, *rejection of Equipment,* revocation of acceptance of Equipment, or any other right that Lessee may have against Lessor.

(*Id.* at A00001–00005) (emphasis added).

After the Petition Date, Debtors decided to reject leases from various computer lessors, including CSI, and replace that equipment with newer and less-expensive equipment from International Business Machines ("IBM"). (*See* Appellee Br. at 4.) Therefore, Debtors filed a motion (hereinafter the "IBM Motion") for authorization to reject nineteen of thirty-one CSI leases (approximately 3500 computers and 114 servers), while simultaneously executing a new, post-petition lease with IBM. (*Id.*) On May 29, 2002, the Bankruptcy Court granted Debtors' motion and issued a Rejection Authorization Order. Pursu-

ant to this Order, Debtors sought to replace its leased CSI equipment with IBM equipment according to a "Rollout Plan" commencing June 1, 2002. Debtor's claim this Rejection Authorization Order allowed Debtors to save approximately $150,000 per month. (*Id.*)

The IBM Motion specifically stated that Master Lease Schedules would be rejected, and the obligation for rent would cease, on the day that Debtors notified the lessor that the equipment on that schedule was replaced, and stated:

[t]he Debtors or IBM will inform the Computer Equipment Lessor that the particular schedule has been *rejected as of that date, and the Debtors will cease paying rent on an administrative basis for the equipment.*

(A00017.) It is undisputed that this language was in no way objected to in the Opposition Brief to the IBM Motion. (*See* Appellee Br. at 5.)

Debtors anticipated that the implementation of the Rollout Plan would take place over several months. (*Id.* at 4.) As a result, certain Master Lease Schedules were replaced before other schedules from the same lessor. (*Id.*) Thus, Debtors sought to reject each individual Master Lease Schedule on the day that IBM had replaced all of the equipment on that schedule, rather than wait to reject the Master Lease in its entirety once all the equipment from CSI was replaced. (*Id.* at 4–5.) In accordance to the procedure articulated in the IBM Motion, Debtors sent written notice to CSI, which indicted that a particular schedule was rejected as of the date of the letter. (*See* A00012–A00014; A00016.) As of October 1, 2002, no CSI leases were rejected; however, at varying points in October 2002 these leases were rejected.

---

1. Cites to A\_\_\_\_\_ are to the Appendix to

Appellant's Brief in Support of Appeal.

On December 13, 2002, CSI filed a motion with the Bankruptcy Court seeking the entire October rental amount (hereinafter the "CSI claim") of $288,078.31 as an administrative expense claim. On January 17, 2003, Debtors filed an objection to the CSI claim, and argued that the October rentals should be prorated with respect to the leases rejected in October. On January 29, 2003, the Bankruptcy Court held a hearing, and allowed Debtors to pay a prorated rent based upon the effective date of each schedule.[2] On February 18, 2003, the Bankruptcy Court entered the accompanying Order.

## II. Jurisdiction and Appellate Review

Jurisdiction to hear this appeal exists pursuant to 28 U.S.C. § 158(a)(1), as the February 18 Order was a final order of the Bankruptcy Court. In reviewing the decisions of a bankruptcy court, a district court applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component. *In re Woskob,* 305 F.3d 177, 181 (3d Cir.2002); *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992). Upon a determination that the bankruptcy court's factual findings are not clearly erroneous, the district court must examine whether the factual findings are legally sufficient to support the bankruptcy court's conclusions of law. *See Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). The [district] court reviews mixed questions of law and fact under a mixed standard, affording a clearly erroneous standard to integral facts, but exercising plenary review of the [bankruptcy] court's interpretation and application of

those facts to legal precepts. *In re Top Grade Sausage, Inc.,* 227 F.3d 123, 125 (3d Cir.2000).

When a bankruptcy court exercises its equitable discretion that determination is reviewed for an abuse of discretion. *Bermuda Exp., N.V. v. M/V Litsa,* 872 F.2d 554, 557 (3d Cir.1989). Under the abuse of discretion standard, the Third Circuit has stated that, "An abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 180 (3d Cir.2002). An abuse of discretion also occurs when the court's action was "arbitrary, fanciful, or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408 (3d Cir.2002).

A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been made. *See U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *In re Cellnet Data Sys. Inc.,* 327 F.3d 242, 244 (3d Cir.2003).

## III. Analysis

CSI appeals each of the three reasons articulated by the Bankruptcy Court on why it is not entitled to a full October's rent from Debtors. Consequently, each of the Bankruptcy Court's reasons will be discussed below, and the appropriate standard of review will be applied. .

---

**2.** According to Appellant, the prorated October payment would be $159,994.22. (App. Br. at 6 n. 3) It is not known if Debtors have paid this amount to CSI. Hence, CSI seeks the balance of the rent it believes it is owed, or $128,084.09.

## A. CSI's Waiver of Rights

CSI appeals the Bankruptcy Court's decision that held that CSI's opposition to the prorated rent was untimely raised in its Motion for Payment. The Bankruptcy Court concluded that CSI should be bound by the language of the IBM Motion and the Rejection Authorization Order, and therefore, cannot subsequently challenge the Bankruptcy Court's Order that allowed for Debtors to cease paying rent on the rejected Master Lease Schedules as of the day of rejection. (*See* A00331.) Although CSI objected to the April 2002 IBM Motion on other grounds, it did not object to rejection procedure and the corresponding date that rent would cease to be owed. The Rejection Authorization Order stated that the rejection of leases shall take effect "upon the Debtors giving notice to the applicable Computer Equipment Lessor . . . that all of the equipment subjected to a Rejected Master Lease Schedule has been replaced and either is available for shipment or has been lost or disposed." (A00029.)

■■ As a threshold matter, the Court will exercise plenary review of the Bankruptcy Court's interpretation and application of facts to a legal precept; that is, whether CSI waived its argument that the cessation of rent was to occur on the date the lease was rejected. *See, e.g., In re Top Grade Sausage, Inc.,* 227 F.3d 123, 125 (3d Cir.2000). The Bankruptcy Court relied on *In re Comdisco,* 272 B.R. 671, 673 (Bankr.N.D.Ill.2002) to support its analysis of the waiver question. On appeal, the parties argue that *Comdisco* supports their respective arguments. The bankruptcy court in *Comdisco* was presented with two real property leases, one in Oregon and the other in California, that pursuant to Section 365(d)(3) were rejected. *Id.* Debtor filed a motion to reject certain leases, including the lease of the Oregon property,

which also *expressly stated* that rejection be effective on the date of the motion, July 16, 2001. *Id.* (emphasis added.) The *Comdisco* court determined that the lessor waived its argument to challenge the order, because it failed to do so in a timely manner. The court stated:

> An order granting the motion was not entered until after a hearing on August 9th, but, consistent with the motion, the order provided that the rejection of the Oregon property lease was effective as of July 16th. [Lessor] had notice of the motion, the hearing on August 9th, and the entry of the order. It did not oppose the motion or ask that the order be amended or modified under Rule 59 or request relief from the order under Rule 60.

*Id.* The bankruptcy court reasoned that the lessor was bound by the order, whether or not it might have had some grounds to oppose the motion. Thus, the lessor's request for payment until the time of the order, in contradiction to the express terms of the order, was denied.

Here, Judge Newsome, relying on *Comdisco,* reasoned:

> [s]ince the order rejecting the leases says that they're rejected, an the order, the motion specifically said that means you get paid up to that date. And you didn't say a word about that. . . . and we've had a lengthy hearing in that matter and not one sentence was argued about the fact [sic] that part of the motion. It [CSI's argument] was all about whether or not they had sound business reasons for rejecting the leases in question. So you're bound as surely as the Oregon lessor was bound in *Comdisco* . . .

(A00336–37.) CSI argues that *Comdisco* is distinguishable because Debtors never indicated in the IBM Motion that monthly rentals would be subject to proration or

that the rejection effective date would be any date other than that expressly provided for in the Master Lease. (Appellant Br. at 10.) Hence, CSI asserts that it had no basis for objecting to the proration process. (*Id.*)

The Bankruptcy Courts's determination that CSI's objection to the proration was untimely is correct.[3] At the May 1, 2002 hearing, CSI conceded that inherent in the IBM Motion was Debtors' desire to stop paying rent on the same day that they rejected the lease. (*See* A00337.) On Page 10, of the IBM Motion it stated that, "[a]s of that date [rejection date] ... the Debtors will cease paying rent on an administrative basis for the equipment." (A00017.) Thus, CSI was sufficiently notified of Debtors desire to cease paying rent of the day the lease was rejected. Undeniably, the Master Lease required that Debtors make payments on the first of every month. Yet, CSI cannot idly standby when the Debtors make a request for an amendment to those terms in a motion to reject its lease. The payment terms and rejection process was the IBM Motion's *raison d'etre*. In addition, CSI's failure to object to any aspect of this procedure is especially pronounced given the Bankruptcy Court's mandate to consider equity in CSI's Motion for Payment pursuant to 11 U.S.C. 365(d)(10).

The determination that CSI's objection to prorated rent payments was untimely in its Motion for Payment requires the Court to affirm the Bankruptcy Court's February 18, 2003 Order. Nevertheless, for the sake of completeness, the discussion below will address the equitable determinations of the Bankruptcy Court as it relates to section 365(d)(10).

### B. The Proration of Equipment Leases under Section 365(d)(10)

CSI appeals two related findings by the Bankruptcy Court. First, CSI argues that the Bankruptcy Court erred in its interpretation of Section 365(d)(10); namely, CSI believes that the statute and accompanying Third Circuit caselaw requires the Debtor to fully honor monthly payments which come due pre-rejection. (*See* Appellant Br. at 11.) Second, CSI asserts that the court abused its discretion when it held that the equities support proration.

 The reviewing court will exercise plenary review over the legal question of the proper interpretation of a statute. *See In re McDonald*, 205 F.3d 606, 609 (3d Cir.2000). However, when a bankruptcy court exercises its equitable discretion under Section 365(d)(10), that determination is reviewed for an abuse of discretion. *See Bermuda Exp., N.V. v. M/V Litsa*, 872 F.2d 554, 557 (3d Cir.1989).

### 1. Obligations due under Section 365(d)(10)

 Title 11 U.S.C. § 365(d)(10), governs the treatment of unexpired leases of personal property once the Debtor had filed its petition, and states in relevant part, that

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2) ... first arising from or after 60 days after

---

**3.** Also, the *Comdisco* court's decision to deny the proration of a California lease, a decision relied upon by CSI in it appeal, did not involve a waiver situation, like that of the Oregon lease. (*see* Appellee Br. at 19 n. 7.) Whether proration is appropriate or not will be discussed below; however, the narrow issue presented here is whether CSI is barred from challenging the express terms of the Rejection Authorization Order, and the relief sought in the IBM Motion, when it did not challenge these terms in the bankruptcy court.

the order for relief in a case under chapter 11 of this title ... under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected not-withstanding section 503(b)(1) of this ti-tle ... *unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.* This subsection shall not be deemed to affect the trustee's obli-gations under the provisions of subsec-tion (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(10) (emphasis added). Also, implicated is Section 503(b)(1)(b), which states:

> After notice and a hearing, there shall be allowed, administrative expenses, oth-er than claims allowed under section 502(f) of this title, including-
>
> (1) (A) the actual, necessary costs and expenses of preserving the estate, in-cluding wages, salaries, or commissions for services rendered after the com-mencement of the case ...

11 U.S.C. § 503(b)(1). The interaction of these two sections is confusing, however, section 503(b)(1) allows a creditor, such as CSI, to be reimbursed for post-petition services only to the extent that the credi-tor demonstrates a "benefit to the estate." *See In re O'Brien Environmental Energy, Inc.,* 181 F.3d 527, 532–33 (3d Cir.1999). Section 503(b)(1), therefore, would allow for the recovery of post-petition rent be-cause debtors were still using the equip-ment, and therefore, benefitting the estate. That is, a debtor must ordinarily perform under the terms of a personal property lease. Congress, however, added a caveat to the rule that is at issue in this appeal. Hence, Section 365(d)(10) allows a bank-ruptcy court the ability to disavow the general rule if it determines that the re-covery of rent would be inequitable.

The Third Circuit has not spoken to whether section 365(d)(10) *requires* a court to pro-rate an unexpired personal property lease, or enforce the pre-petition lease terms (also known as the "billing date" approach) once rejection of that lease oc-curs. The Circuit, however, has decided that under an unexpired *real property* lease, covered under subparagraph (d)(3), the debtor-lessee *must* pay all of pre– and post-petition property taxes, which were bargained for in a triple net lease. *See, e.g., CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward),* 268 F.3d 205 (emphasis added) (3d Cir.2001.)

The debtor in *Montgomery Ward* only paid the portion of the taxes attributable to its post-petition occupancy of the prop-erty, and lessor sought pre-petition taxes. *Id.* at 207. The court held that subpara-graph (d)(3) required the debtor to fulfill all obligations "arising from and after the order for relief under any unexpired leases of non-residential property" refers to "all amounts that first become due and en-forceable" after the petition date without regard to whether the obligation accrued pre– or post petition. *Id.* at 209–210. The court found unpersuasive those cases that employed a proration approach, but in-stead observed that the amendments to subparagraph (d)(3) were created to recti-fy the problem of landlords not receiving current payment for current services as set forth in the lease. *See id.* at 211. Recently, and raised in this appeal, Judge Walrath looked to *Montgomery Ward,* and stated that "given the similarities between section 365(d)(3) and section 365(d)(10), we conclude that the Third Circuit would con-

strue section 365(d)(10) in the same manner." *In re Muma Servs.,* 279 B.R. 478, 487 (Bankr.D.Del.2002).

Similar to Judge Newsome's analysis, it is not appropriate to rely on *In re Muma* as persuasive precedent because subparagraphs (d)(3) (real property leases) and (d)(10) (personal property leases) have different language that incorporate the distinct considerations between real property and personal property. The Bankruptcy Code expressly provides for a court considering an unexpired personal property (equipment) lease the ability to weigh the "equities of the case." *See* 11 U.S.C. § 365(d)(10). As Judge Newsome stated, no such equitable exception is found in subpart (d)(3). (*See* A00334–35.)

CSI attempts to demonstrate the similarities between the two sections, yet it makes no mention of the equitable exception that was created by the Bankruptcy Reform Act 1994, the legislation that created subparagraph (d)(10). CSI's reliance on real property (Section 365(d)(3) cases), while compelling, is not persuasive in conducting a *de novo* review of Judge Newsome's interpretation of section 365(d)(10). Had the two sections been identical, such a comparison might be warranted. Such is not the case here.

Thus, after exercising plenary review of the bankruptcy court's interpretation and application of 11 U.S.C. § 365(d)(10), it is appropriate to affirm the February 18 Order on the grounds that Section 365(d)(10) expressly allows a court to exercise its discretion, and weigh the equities in a case involving an unexpired equipment lease.

### 2. The Equities Support Proration

 As stated earlier, Judge Newsome's equitable considerations and holding is reviewed under an abuse of discretion standard. Under the "abuse of discretion standard," the Third Circuit

has stated that, "An abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 180 (3d Cir.2002). An abuse of discretion also occurs when the court's action was "arbitrary, fanciful, or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408 (3d Cir.2002).

At issue in this appeal is Judge Newsome's determination that "it would be inequitable to allow the lessor [CSI] the windfall by burdening the debtor's estate of rent for the entire month on equipment the debtors used only for the portion thereof." (A00340.) Undeniably, once the Master Lease Schedule was rejected, Debtors had no more right to use the equipment on that schedule, and full ownership and possession of that equipment reverted to CSI. (Appellee Br. at 8) Yet, CSI seeks a full month's rent. (*Id.*) CSI submits a myriad of section 365(d)(10) cases, each with a unique factual situation, in which courts have disallowed proration and summarily rejected the "windfall" argument. Indeed, this is an equitable determination; thus, the applicability of these non-controlling cases is not persuasive to a district court's review of a bankruptcy court's case-by-case analysis. It was within Judge Newsome's discretion, under section 365(d)(10) to order prorated rent.

Admittedly, both parties stand to lose when an unexpired lease is rejected. In the IBM Motion, Debtors stated that rejection of the Master Lease Schedules would "transform roughly $4 million that would have been payable on an administrative basis into some amount of general unsecured claims." (A00021.) Further, it

was stated that Debtors "would save at least $1.5 million over the course of the next three years by entering into the IBM Agreement and rejecting the Rejected Master Lease Schedules." (A00021.)

The Third Circuit has echoed the oft-cited principle that the Bankruptcy Code has "two overarching purposes, one equitable and the other rehabilitative." *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 250 (3d Cir.2001). As explained above, it was within Judge Newsome's authority under 11 U.S.C. 365(d)(10) to consider the equities. Despite the existence of a bargained-for lease, equity could sustain a decision to pro-rate the rents because the Debtor no longer has possession of the property. The rehabilitative purposes of the Code would also be served by allowing a pro-ration of the rents in this case because more money would be available for reorganization and/or distribution to other unsecured creditors. Judge Newsome's analysis was not "arbitrary, fanciful, or clearly unreasonable." Therefore, the Bankruptcy Court did not abuse its discretion in making an equitable determination to pro-rate the October 2002 rents.

## IV. Conclusion

For the foregoing reasons, the Court will affirm the United States Bankruptcy Court for the District of Delaware's Order of February 18, 2003. An appropriate Order will be entered.